James K. Rogers, UT Bar No. 18783
Jacob P. Meckler, D.C. Bar No. 90005210*
America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, D.C. 20003
James.Rogers@aflegal.org
Jacob.Meckler@aflegal.org
(202) 670-3304
(202) 964-3721

*Pro Hac Vice application forthcoming**

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| GOUD MARAGANI, | **COMPLAINT** |
| Plaintiff, | |
| | JURY DEMANDED |
| vs. | |
| | Case No. _2:25-cv-405_____ |
| LUCID SOFTWARE INC., | |
| Defendants. | Honorable Judge _____ |
| | Magistrate Judge _____ |

Plaintiff Goud Maragani, by and through his undersigned counsel, hereby alleges and states as follows:

### INTRODUCTION

1.    Plaintiff Goud Maragani is an experienced attorney with over 20 years of experience. He was employed for three years and four months in the Office of

General Counsel at Lucid Software, Inc. ("Lucid"), a Utah-based software company, working on legal compliance and litigation issues.

2.      Lucid, through its agents and representatives, discriminated and retaliated against Mr. Maragani, based on sex stereotyping, sexual orientation stereotyping, and Mr. Maragani's religious viewpoint, because Mr. Maragani is an openly gay conservative Christian who opposes the promotion of transgender ideology for children. These actions led to Mr. Maragani's termination from his employment with Lucid.

3.      Lucid has violated Mr. Maragani's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* based on racial, religious, sex, and sexual orientation discrimination, and for retaliating against him for invoking nondiscrimination protections.

**NAMED PARTIES**

4.      Plaintiff Goud Maragani is a Utah citizen whose primary residence is in Riverton, Utah.

5.      Defendant Lucid Software Inc. is a Utah-based software company that maintains its headquarters at 10355 S. Jordan Gateway, Suite 300, South Jordan, Utah, 84095 and is incorporated in Delaware. Since 2021, Lucid has been a member of Equality Utah's Business Equality Leader program. In 2021, Lucid touted in a LinkedIn post that it had earned the Business Equality Leader certification from Equality Utah, and that in order to "achieve this certification, companies must

2

partner with Equality Utah to complete a series of diversity and inclusion trainings. Lucid is joining the ranks of 12 other diversity and inclusion business leaders in Utah. Thank you to the 2020 and 2021 Lucid Diversity and Inclusion Committees for their work on helping to get Lucid certified . . . ."

## OTHER RELEVANT PARTIES

6.    Equality Utah is an IRS 501(c)(4) non-profit corporation that represents and leads the "efforts for LGBTQ equality at the state and local levels by sponsoring LGBTQ legislation, opposing harmful bills, lobbying elected officials, building coalitions, and empowering individuals and organizations to engage in the legislative process."

7.    Equality Utah Foundation is an IRS 501(c)(3) non-profit corporation.

8.    Equality Utah and Equality Utah Foundation (hereinafter collectively referred to as "Equality Utah") are located at 350 E. 400 S, Suite 305, Salt Lake City, Utah, 84111.

9.    Troy Williams is presently the Executive Director of Equality Utah. Mr. Williams became the Executive Director of Equality Utah in the fall of 2014 and remains the organization's Executive Director. Upon information and belief, Troy Williams is a resident of Salt Lake City, Utah.

10.    Sunny Washington was, at all relevant times, a board member of Equality Utah Foundation. She is also the founder and previous CEO of Utah Tech Leads, and currently the co-founder and CEO of OrcaPanda. Upon information and

3

belief, Sunny Washington is a resident of Draper, Utah.

11. Washington acted in concert and on behalf of Equality Utah and Equality Utah Foundation.

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the federal claims arise under the Constitution and laws of the United States, including Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e *et seq.*

13. Venue is proper in this District under 42 U.S.C § 2000e-5(f)(3) and 28 U.S.C. § 1391(b)(1)-(2).

14. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201, 2202. Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 2000e et seq.

## FACTS

15. Mr. Maragani opposes, based on his sincerely held Christian religious beliefs, efforts to encourage children to attempt to socially or medically transition their gender away from their biological sex.

16. Mr. Maragani is an attorney, an openly gay man, a racial minority as an Indian American, and a military veteran.

17. Between November 15, 2022, and October 30, 2023, Mr. Maragani served as the President of the Utah Log Cabin Republicans in a volunteer capacity outside of his work hours with Lucid.

18. The Log Cabin Republicans are a national non-profit organization and

describe themselves as "America's oldest and largest organization for LGBT conservatives and our straight allies."

19.    Outside of and separate from his work with Lucid, starting in or around February 2023, Mr. Maragani made posts on the social media platform, X (formerly known as Twitter), critical of Equality Utah's policy positions, which includes giving children puberty blockers, cross-sex hormones, and surgeries, allowing men and boys to use women's and girls' locker rooms and restrooms, allowing men and boys to play women and girls sports, and teaching children in kindergarten through third grade about gender identity and sexual orientation, which included giving children pornographic books.

20.    Mr. Maragani made these statements with an understanding that they were protected statements under Utah's Antidiscrimination Act ("UADA"). Specifically, Utah Code § 34A-5-112(3) prohibits Utah employers from taking adverse employment action against employees for "lawful expression or expressive activity outside of the workplace regarding the [employee's] religious, political, or personal convictions, including convictions about marriage, family, or sexuality, unless the expression or expressive activity is in direct conflict with the essential business-related interests of the employer."

21.    On July 6, 2023, two of Equality Utah's board members, Sunny Washington and Eli McCann, met, at their request, with Mr. Maragani in his capacity as President of Utah Log Cabin Republicans. The conversation focused on

5

ways Equality Utah could work with the Utah Log Cabin Republicans.

22.    A follow-up was scheduled with Troy Williams, Ms. Washington, and Mr. McCann for Friday, August 4, 2023. However, on July 26, 2023, Ms. Washington canceled the meeting because Mr. Williams was offended that Mr. Maragani had posted on X criticizing Mr. Williams and Equality Utah because they had supported allowing biological males into women's locker rooms.

23.    Instead of a follow-up meeting, on August 1, 2023, Mr. Williams emailed Kat Judd, Lucid's Senior Vice President of People and Culture (Lucid's human resources department), to complain about Mr. Maragani's activities on X and his political activity outside of work hours.

24.    Mr. Williams started his email by noting "how deeply grateful I am to you and Lucid for your ongoing support of Equality Utah and our Business Equality Leader program. We love our partnership with you." Mr. Williams highlighted social media posts that Mr. Maragani had made from his personal X account about Equality Utah and Mr. Williams. Mr. Williams claimed in his email that he was concerned that Mr. Maragani would endanger the safety of a transgender Equality Utah employee who would be presenting at an employee training event at Lucid.

25.    This claim had no basis in fact as Mr. Maragani had interacted with and exchanged pleasantries with the transgender Equality Utah employee in the past without incident. Mr. Williams was present during at least one of the past interactions.

26. Upon information and belief, Mr. Williams did not contact those Lucid employees coordinating the training event, but instead contacted the Lucid executive in charge of human resources with the authority to terminate employees, indicating that he sought to have Mr. Maragani disciplined.

27. Three days later, on August 4, 2023, Ms. Washington contacted Lucid's CEO, Dave Grow. During her call, according to discovery responses from Equality Utah in a separate matter, Ms. Washington told Mr. Grow that "she was on the board of Equality Utah . . . ." Ms. Washington told Mr. Grow that she was familiar with Lucid and Lucid's company culture and that Mr. Maragani's social media commentary "was not," in her view, "reflective of the overall company culture." Ms. Washington told Mr. Grow she thought he should know about Mr. Maragani's comments and their possible spillover into events held at Lucid.

28. Mr. Maragani was an elected member of the Utah Republican Party's State Central Committee. On August 5, 2023, Mr. Maragani posted on his personal X account (@goud4utah) his proposal that the State Central Committee of the Republican Party officially censure Republican Salt Lake County Council Member Aimee Winder Newton. He proposed the censure because Newton, a Senior Advisor to Governor Spencer Cox and director of his Office of Families, had helped raise $45,000 for Equality Utah's Political Action Committee to try to defeat conservative Republicans. Mr. Maragani made this post outside of his Lucid work hours, and in his personal capacity.

29.     On August 7, 2023, Mr. Williams sent another email to Ms. Judd to again raise the issue of Mr. Maragani's social media posts about Equality Utah, Republican Salt Lake County Councilmember Aimee Winder Newton, and the "transgender community," noting that he was "disappointed I haven't received a response from you yet."  Ms. Judd responded to Mr. Williams, acknowledged his complaint, and apologized for her slow response.

30.     That same day, on August 7, 2023, Ms. Judd and Cara Frisbie, Lucid's General Counsel and Mr. Maragani's direct supervisor, met with Mr. Maragani to discuss Mr. William's complaints. During that meeting, Ms. Frisbie and Ms. Judd told Mr. Maragani not to post about Troy Williams or Equality Utah on social media, or he would be terminated.

31.     During that same meeting, Ms. Judd explained that she thought it was "confusing that Mr. Maragani would not work with Equality Utah," given that he is a gay man.

32.     Ms. Judd's comment stereotyped Mr. Maragani based on his sex and sexual orientation. This statement is emblematic of the fact that Lucid expected Mr. Maragani to act in accordance with stereotypes related to his sex and sexual orientation. Lucid seemingly believed that because Mr. Maragani is a gay man, his views should align with those of Equality Utah.

33.     During that meeting, Mr. Maragani pointed out that his posts were outside his work hours and unrelated to Lucid. Ms. Frisbie and Ms. Judd agreed that

Mr. Maragani had done a good job of keeping his political activities separate from his employment. Mr. Maragani expressed concern that their demand that he stop posting social media content critical of Equality Utah violated UADA.

34.     The following day, on August 8, 2023, Mr. Maragani emailed Ms. Frisbie and Ms. Judd to memorialize the conversation. He wrote that he was told that "You stated that . . . I should not post on social media about Equality Utah if I want to keep my job. I should not post on social media about Troy Williams of Equality Utah if I want to keep my job. You gave me a verbal warning and indicated that continued social media activity that our company's leadership views as a violation of Lucid's values and/or Social Media Policy could lead to termination."

35.     The next day, on August 9, 2023, Ms. Frisbie responded to Mr. Maragani's email. She stated that "even if your tweets are not workplace conduct (e.g., if the conduct is outside of work hours and through personal social media accounts), if the conduct is in direct conflict with Lucid's essential business related interests, Lucid can request that you stop such conduct." Her citation of the "essential business related interests" legal concept shows that Lucid understood that Mr. Maragani was claiming that Lucid violated UADA because, under Utah Code § 34A-5-112(3), they had threatened to "discharge" or "terminate" him because of his "lawful expression or expressive activity outside of the workplace regarding" his "religious, political, [and] personal convictions, including convictions about marriage, family, or sexuality" and because the subject matter about which he was expressing his

convictions—transgender issues—had nothing to do "with the essential business-related interests of" Lucid, which is a software company and not an LGBT advocacy organization. *See* Utah Code § 34A-5-112(3).

36.    In her email, Ms. Frisbie also emphasized Lucid's relationship with Equality Utah and commitment to Diversity, Equity and Inclusion: "You may not have realized how fully Lucid supports Equality Utah. We are a Certified Business Equality Leader through Equality Utah, we partner with Equality Utah to deliver DEI training to our employees, and we provide money to sponsor them . . . We believe you know how strongly Lucid is committed to diversity, equity and inclusion to be able to recruit and retain a diverse workforce, succeed as a global software company, and meet the requirements of a federal contractor . . . Any actions that could undermine those goals or tarnish our reputation as an inclusive work environment (even unintentionally) are taken seriously by our executive team and conflict with our essential business interests."

37.    Mr. Maragani is a gay man, a racial minority, and a military veteran. Typically, companies that promote DEI claim that they need the DEI programs to attract and promote candidates who meet Mr. Maragani's profile.

38.    In the August 9th email, Ms. Frisbie also wrote, "We further discussed how Lucid's Social Media Policy, which you helped author, requires employees to protect Lucid's reputation by considering how even personal statements can reflect negatively on Lucid or harm our reputation. As you know, private companies like

Lucid are permitted to discipline employees up to and including termination for policy violations, as permitted by federal, state, and local laws. We requested that you cease activities that are in direct conflict with Lucid's essential business related interests and in violation of our social media policy."

39.    In his August 8th email, Mr. Maragani asked for guidance about what he could post on social media. Specifically, Mr. Maragani asked if he could respond when "Equality Utah, Troy, or others post about me on social media? Here is an example from yesterday[.]" Mr. Maragani included a screenshot of an X post about Mr. Maragani by Troy Williams (@troywilliamsut), dated August 7, 2023 at 4:28 p.m., where Mr. Williams stated "I made it a rule not to respond to trolls online. They are not serious political players. This story – and his behavior – speaks for itself." Mr. Williams included a link to a Salt Lake Tribune article.

40.    In response, Ms. Frisbie wrote "We can't tell you exactly what type of conduct may or may not conflict with Lucid's essential business related interests or reflect negatively on Lucid or hard our reputation. Some of it depends on how employees, third parties or the general public perceives your conduct." Mr. Maragani took this to mean that Lucid would consider any post by him, even if he was responding to a post by Mr. Williams or Equality Utah about him, to be a conflict with their supposed essential business-related interests. As a result, Mr. Maragani stopped specifically posting about or tagging Mr. Williams and Equality Utah on social media from his private and Utah Log Cabin Republicans social media accounts.

41.    In her reply email, Ms. Frisbie never articulated how Mr. Maragani's social media posts were actually related to any "essential business-related interests of" Lucid, a software company.

42.    Indeed, if anything, Lucid had publicly portrayed itself as having a business interest in *supporting* Mr. Maragani's outside-of-work expression of his personal convictions because Lucid had been marketing itself to prospective employees as "an inclusive environment" for "unique perspectives."

43.    In fact, before Equality Utah, Mr. Williams, and Ms. Washington had complained to Lucid about Mr. Maragani, Lucid had a history of tolerating Mr. Maragani's outside-of-work expression. For example, Mr. Maragani ran for Salt Lake County Clerk as a Republican in 2022. During the campaign, the Salt Lake Tribune did a piece regarding "controversial" social media posts about political and social issues that Mr. Maragani had made in a Telegram account. When the article was released, Ms. Frisbie met with Mr. Maragani and told him that multiple Lucid employees were upset when they learned about his political positions as articulated in his Telegram posts. She also said the employees expressed that they enjoyed working with Mr. Maragani but were surprised by his political views. Notably, at that time, Ms. Frisbie did not discipline him for his social media activity or articulate any sort of restrictions on his ability to post on social media. In addition, she said that Lucid was planning to convey to anyone who asked for comment that his posts represented his own views and did not reflect the views of Lucid. This response

stands in stark contrast to how Lucid reacted when Troy Williams of Equality Utah and Sunny Williams, an Equality Utah Board Member, complained about Mr. Maragani's social media and political activities outside of work, and indicates that there never was any essential business related interest at play.

44.    On August 10, 2023, just one day after her reply email to Mr. Maragani in which she disputed the application of UADA to Mr. Maragani's out-of-work social media posts, Ms. Frisbie completed her FY24 Mid-Year Review Performance review of Mr. Maragani.

45.    On August 23, 2023, Ms. Frisbie shared her mid-term review with Mr. Maragani. The mid-term review was negative and significantly different from the previous reviews that Mr. Maragani had received at Lucid and from Ms. Frisbie.

46.    During their next one-on-one meeting, when they discussed the review, Ms. Frisbie downplayed the comments in the mid-term review by stating that the negative comments were constructive criticism and that she gave similar remarks to everyone.

47.    In the mid-term evaluation, Ms. Frisbie stated that she received an undisclosed complaint about Mr. Maragani's contribution to a project but gave no specifics of the complaint or any recommendations on how to improve, even after Mr. Maragani pressed her for details about the complaint.

48.    On August 23, 2023, after receiving the negative review, Mr. Maragani wrote an email to Ms. Frisbie, giving her voluminous additional background,

13

research, and information on UADA's requirements under Utah Code § 34A-5-112 regarding protected employee speech in and out of the workplace.

49.    On September 25, 2023, Lucid laid off 75 people. Those employees were given ten weeks of severance plus one (1) additional week for every year of employment at Lucid, health coverage until the end of the calendar year, and free laptop computers. Many of those employees posted on LinkedIn and other social media sites about how they had been laid off.

50.    However, Mr. Maragani was not laid off on September 25, 2023.

51.    Because Mr. Maragani was not laid off, he did not update his LinkedIn profile.

52.    It is likely that Mr. Williams noticed that even after the layoffs, Mr. Maragani's LinkedIn profile still listed him as a Lucid employee.

53.    On September 26, 2023, the day after the layoffs, Mr. Williams again emailed Ms. Judd and, for the first time, also included Ms. Frisbie, about Mr. Maragani and the Utah Log Cabin Republicans.

54.    Mr. Williams claimed that he did not want Mr. Maragani terminated, yet once again complained vociferously to Lucid about Mr. Maragani's outside-of-work speech. The remark seemed odd, given that nobody had suggested to Mr. Williams that Mr. Maragani might be terminated, and indicates that Mr. Williams knew the termination of Mr. Maragani's employment was the likely outcome of his complaints.

55.    Mr. Maragani, in accordance with the instructions he received on August 7, 2023, had ceased speaking about Equality Utah or Troy Williams on X (in his own name and in the name of Utah Log Cabin Republicans), fearing that Lucid would terminate his employment. Therefore, Mr. Williams' email complained about X posts from the Utah Log Cabin Republican account that Mr. Williams found objectionable, but which did not mention Equality Utah or Mr. Williams. These included posts about Republican Salt Lake County Councilmember Aimee Winder Newton and Democratic Senator Jennifer Plumb. This makes it clear that Mr. Williams was broadly targeting Mr. Maragani's political activities outside of work— not just those that discussed Equality Utah or Mr. Williams personally.

56.    In the email, Mr. Williams also said he would "talk to the National Log Cabin Republicans tomorrow."

57.    On September 27, 2023, Ms. Judd responded to Mr. Williams, thanking him for the information and stating that she truly appreciated the partnership between Equality Utah and Lucid. She also told him that "We [Lucid] hope your conversation with Log Cabin Republicans is productive."

58.    On October 10, 2023, Ms. Frisbie and Ashlyn Gagon, Lucid's Associate People Business Partner, informed Mr. Maragani that he was being terminated for poor performance.

59.    Mr. Maragani asked Ms. Frisbie why he was not laid off during the September 25, 2023, layoff. Ms. Frisbie said his termination was performance-

related, whereas the layoffs on September 25 had been because Lucid eliminated the relevant employees' positions, and Lucid would not be refilling the positions terminated that day.

60.     During his exit interview, Mr. Maragani asked Ms. Frisbie what would happen if a General Counsel to whom he applied for a job asked her about him, as she and Ms. Judd were well-connected to attorneys in Utah. Ms. Frisbie said she would not say anything bad because she thought Mr. Maragani had good skills, but that this job was no longer a good fit.

61.     This response is not consistent with a termination truly based on poor performance, but is consistent with a termination based on improper pressure from an outside advocacy group like Equality Utah.

62.     Mr. Maragani's last day at Lucid was October 13, 2023.

## COUNT I
### Sex, Sexual Orientation, and Religion Discrimination in Violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e et seq.

63.     Plaintiff repeats and reasserts each allegation in the paragraphs above as if fully set forth herein.

64.     On information and belief, Defendant Lucid had more than 500 employees during the relevant period.

65.     During the August 7, 2023, meeting, Ms. Frisbie and Ms. Judd told Mr. Maragani not to post about Equality Utah on social media, or he would be terminated.

66.     Ms. Judd then specifically called out Mr. Maragani for not fitting the stereotype of gay males by saying she was "confused" why Mr. Maragani was not aligned with Equality Utah since Mr. Maragani is gay himself.

67.     This statement is emblematic of the fact that Lucid expected Mr. Maragani to act in accordance with stereotypes related to his sexual orientation.

68.     It has long been the law that in "forbidding employers to discriminate against individuals because of their sex, *Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.*" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (quoting *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, n. 13 (1978) (emphasis added). "[H]omosexuality . . . [is] inextricably bound up with sex . . . because to discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex." *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 660-61 (2020).

69.     Lucid, Equality Utah, Mr. Williams, and Ms. Washington jointly targeted Mr. Maragani because of social media posts he made outside of work hours, which were unrelated to Lucid, including posts from the Utah Log Cabin Republicans' social media handle because those posts failed to conform to the stereotype that Lucid had projected onto Mr. Maragani.

70.     Equality Utah's Board Member, Ms. Washington, had earlier told Lucid's CEO, Mr. Grow, that she was familiar with Lucid and Lucid's company

culture and that Mr. Maragani's comment "was not," in her view, "reflective of the overall company culture" evidencing Mr. Maragani's non-stereotypical conformance.

71.     Lucid stereotyped Mr. Maragani as a gay individual and made clear to him that, because of his sexual orientation, he was not permitted to have a perspective that conflicted with Equality Utah.

72.     Lucid also singled out Mr. Maragani because of his Christian beliefs that are opposed to transgender ideology.

73.     Lucid, motivated by its agreements with Equality Utah, discriminated against Mr. Maragani with respect to his compensation, terms, conditions, or privileges of employment because of his sex, sexual orientation, and religion.

74.     Lucid's actions as described herein constitute unlawful sex, sexual orientation, and religiously based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and have caused Mr. Maragani to be damaged, including loss of past income, benefits, and future income.

75.     Mr. Maragani has complied with Title VII's charge filing provisions, 42 U.S.C. §§ 2000e-5(e)(1) and (f)(1).

76.     On March 22, 2024, Mr. Maragani filed a timely charge of discrimination against Lucid, which was dual-filed with the Utah Antidiscrimination and Labor Division of the Utah Labor Commission and the Equal Employment Opportunity Commission.

77.     On February 21, 2025, Mr. Maragani received a Determination and

Notice of Rights letter from the United States Equal Employment Opportunity Commission dated February 18, 2025 (a right to sue letter). (*See* Exhibit 1).

**Count II**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1965, 42 U.S.C. § 2000e-2 et seq.**

78.     Plaintiff repeats and reasserts each allegation in the paragraphs above as if fully set forth herein.

79.     During the August 7, 2023 meeting with Ms. Frisbie and Ms. Judd, Mr. Maragani expressed his concern that Lucid was violating UADA, specifically Utah Code § 34A-5-112, as confirmed by Ms. Frisbie's response email on August 9, 2023, citing the "essential business interests" legal paradigm.

80.     Lucid was targeting Mr. Maragani because of his failure to adhere to the stereotypes they expected for a gay man. When Mr. Maragani objected to this treatment this was a protected activity which granted Mr. Maragani protection from retaliation by Lucid.

81.     However, on August 9, 2023, Ms. Frisbie emailed Mr. Maragani to dispute the application of UADA's employee speech protections. In that email, she said, "You may not have realized how fully Lucid supports Equality Utah. We are a Certified Business Equality Leader through Equality Utah, we partner with Equality Utah to deliver DEI training to our employees, and we provide money to sponsor them . . . We believe you know how strongly Lucid is committed to diversity, equity and inclusion to be able to recruit and retain a diverse workforce, succeed as a global

19

software company, and meet the requirements of a federal contractor . . . Any actions that could undermine those goals or tarnish our reputation as an inclusive work environment (even unintentionally) are taken seriously by our executive team and conflict with our essential business interests."

82.     Following Mr. Maragani's invocation of UADA and in response to it, on August 10, 2023, Ms. Frisbie wrote a poor performance review as pretext to allow her to take disciplinary action in retaliation against Mr. Maragani while divesting him of the protections of UADA.

83.     Ms. Frisbie discriminated against Mr. Maragani for failing to support the causes, namely those of Equality Utah, that Lucid expected homosexual men to support, and then retaliated against him for expressing his opposition to that discrimination.

84.     Ms. Frisbie also retaliated against Mr. Maragani for opposing their discrimination against him based on his religious beliefs and sexual orientation.

85.     Upon notifying Mr. Maragani of his termination on October 10, 2023, Ms. Frisbie cited the pretextual mid-term review to support termination for poor performance.

86.     When Mr. Maragani asked Ms. Frisbie what she would say if a future employer contacted her to ask about him, she replied that she would not say anything bad about him because she thought Mr. Maragani had good skills, but that this job was no longer a good fit.

87.     This is strong evidence that the reason for his firing, poor performance, was a pretext. Few employers who have just fired someone for poor performance assure the fired employee that they will not say anything bad about the employee to other employers and then tell them that it was a poor fit. However, employers who believe the fired employee was a high performer, but who fired them due to the employee's unpopular speech may issue just such a reassurance.

88.     Lucid's actions as described herein constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and have caused Mr. Maragani to be damaged, including loss of past income, benefits, and future income.

89.     On March 22, 2024, Mr. Maragani filed a timely charge of discrimination, and thereafter amended the charge to include retaliation, against Lucid, which was dual filed with the Utah Antidiscrimination and Labor Division of the Utah Labor Commission and the Equal Employment Opportunity Commission.

90.     On February 21, 2025, Mr. Maragani received a Determination and Notice of Rights letter (a right to sue letter) from the United States Equal Employment Opportunity Commission. (*See* Exhibit 1).

**PRAYER FOR RELIEF**

WHEREFORE, Mr. Maragani respectfully requests that this Court enter judgment in his favor and against Lucid, and provide the following relief:

A.     A declaratory judgment that the Lucid violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq.

B.    A declaratory judgment that the Lucid violated Utah's Anti-Discrimination Law, Utah Code § 34A-5-112(2).

C.    An order for such equitable relief that will make Goud Maragani whole for Lucids' conduct, including the following: back pay; front pay; compensatory damages; punitive damages; and prejudgment and post-judgment interest.

D.    Reasonable costs and expenses of this action, including attorneys' fees, under Title VII of the Civil Rights Act of 1964, and any other applicable laws.

E.    Such other relief as the Court deems appropriate and just.

DATED this 22nd day of May, 2025.

/s/ James Rogers
James K. Rogers, UT Bar No. 18783
Jacob P. Meckler, D.C. Bar No. 90005210*
America First Legal Foundation
611 Pennsylvania Ave. SE #231
Washington, D.C. 20003
James.Rogers@aflegal.org
Jacob.Meckler@aflegal.org
(202) 670-3304
(202) 964-3721

*Pro Hac Vice application forthcoming**